UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                                  19-cr-395 (PKC)

         -against-

                                                   OPINION AND ORDER

VANCE COLLINS, a/k/a "Big AK," and
RAMON RAMIREZ, a/k/a "Obendy,"

                 Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.:

        Vance Collins and Ramon Ramirez were convicted by a jury on October 21, 2020 of conspiracy to commit murder-for-hire and substantive murder-for-hire, in violation of 18 U.S.C. §§ 1958 and 2. Collins was also convicted of being a felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1). Before the Court are motions for acquittal or for a new trial filed by both defendants, pursuant to Rules 29 and 33, Fed. R. Crim. P.

LEGAL STANDARD

        Rule 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Rule 29(a), Fed.R.Crim.P.; see also id. Rule 29(c) (governing post-trial motions). In reviewing such a motion, the court "must view the evidence in a light that is most favorable to the government, and with all reasonable inferences resolved in favor of the government." United States v. Anderson, 747 F.3d 51, 60 (2d Cir. 2014). The court must "defer[ ] to the jury's evaluation of the credibility of witnesses, its choices between permissible inferences, and its assessment of the weight of the evidence." United States v. Jones, 482 F.3d 60, 68 (2d Cir. 2006); United States v.

Florez, 447 F.3d 145, 156 (2d Cir. 2006) ("We will not attempt to second-guess a jury's credibility determination on a sufficiency challenge."). The court must deny the motion if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Aguilar, 585 F.3d 652, 656 (2d Cir. 2009) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). However, "if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." United States v. Lorenzo, 534 F.3d 153, 159 (2d Cir. 2008).

Such deference is "especially important when reviewing a conviction for conspiracy . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." Anderson, 747 F.3d at 72–73 (quoting United States v. Pitre, 960 F.2d 1112, 1121 (2d Cir. 1992)). "The record must nonetheless permit a rational jury to find: (1) the existence of the conspiracy charged. . .; (2) that the defendant had knowledge of the conspiracy. . .; and (3) that the defendant intentionally joined the conspiracy." United States v. Santos, 541 F.3d 63, 70 (2d Cir. 2008) (citations and quotation marks omitted). A "defendant's mere presence at the scene of a crime, his general knowledge of criminal activity, or his simple association with others engaged in a crime are not, in themselves, sufficient to prove the defendant's criminal liability for conspiracy." Anderson, 747 F.3d at 61. However, a defendant's "presence may establish his membership in the conspiracy if all of the circumstances considered together show that by his presence he meant to advance the goals of that conspiracy." United States v. Abelis, 146 F.3d 73, 80 (2d Cir. 1998) (citation omitted). If a conspiracy is shown to exist, "it does not take

overwhelming proof to link additional defendants to it." United States v. Desimone, 119 F.3d 217, 223 (2d Cir. 1997).

Rule 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Rule 33(a), Fed R.Crim. P. Although granting such a motion is in the court's discretion, "that discretion should be exercised sparingly." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992). "Motions for a new trial are disfavored in [the Second] Circuit. . . ." United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995). "The ultimate test is whether letting a guilty verdict stand would be a manifest injustice . . . There must be a real concern that an innocent person may have been convicted." United States v. Canova, 412 F.3d 331, 349 (2d Cir. 2005) (citations and internal quotations omitted).

THE MOTION FOR A JUDGMENT OF ACQUITTAL WILL BE DENIED

Ramirez argues that he is entitled to a judgment of acquittal on the murder-for-hire and murder-for-hire conspiracy charges because the testimony of Jakim Mowatt was incredible as a matter of law. Collins joins this argument, adding that because Mowatt's testimony was patently incredible, the government failed to establish the required elements of intent and payment. Ramirez also argues that he is entitled to an acquittal because the government failed to prove that any defendant or coconspirator used a facility of interstate commerce. These arguments fail for reasons that will be explained.

### A. A Reasonable Jury Could Find the Trial Testimony To be Credible and, Taken in the Totality of Evidence, <u>Sufficient to Support a Conviction.</u>

The government's theory of the case was that defendant Ramirez became angry when he learned that his wife (with whom he was separated but still married) was having an affair with another man, Eric Santiago. (Trial Tr. at 13–14; 85–87; 118–20.) Ramirez discussed his extreme distress with defendant Collins whom he knew as a close friend and leader of his gang. (Id. at 49; 123–24; 134–35.) The two hatched a plan to hire somebody to attack Santiago. (Id.) While the attack was originally planned to be a physical assault, it eventually escalated to a plan for murder. (Id. at 131.) Collins arranged for a lower-ranking gang member to commit the murder who, in turn, recruited a second individual. (Id. at 119–20.) On the evening of the planned murder, the plan was disrupted by the presence of another person at Santiago's home. (Id. at 164.)

The government's evidence consisted of the testimony of Santiago, two cooperating witnesses (the two would-be murderers), three members of law enforcement, photographs, videos, text messages and other documentary evidence. Neither defendant testified nor called any witnesses, though Collins's attorney read a stipulation to the jury regarding the practices of the Santeria religion.

The key to the government's case was the testimony of cooperating witness Jakim Mowatt. Mowatt testified that Collins had solicited him to perform the murder, and that he then enlisted his friend Barry Johnson (the second cooperating witness) to assist. (Trial Tr. at 119–20.) Mowatt, Johnson, and a third accomplice traveled to the victim's home and place of work to prepare for the murder. (Trial Tr. at 141–44, 160–64.) Videos that Mowatt recorded during these preparatory visits were received as evidence. (Id; G. Ex. 703-A, B, and C.) On the night

that Mowatt and Johnson planned to commit the murder, the duo travelled to Santiago's home but abandoned the plan after seeing that Santiago had a friend with him and was protected by a fence surrounding his property. (Id. at 163–66.) They were subsequently arrested on unrelated charges and no further murder attempt was made. (Id. at 167, 483.)

Mowatt and Johnson testified that, wholly apart from the charged conspiracy, they had each sold and consumed drugs and committed acts of violence. (Trial Tr. at 171, 173, 512, 514, 515.) Mowatt specifically testified that he was a high-ranking member of a Bronx gang, and had a "reputation . . . as a shooter in [his] neighborhood." (Id. at 122.) He also testified that he had used marijuana, cocaine, and ecstasy several times prior to his arrest. (Id. at 171–73.) The defense extensively cross-examined Mowatt and Johnson, including on their substance abuse and criminal past. (Id. at 245–52; 512–20.) Defense counsel introduced the plea agreements in which the cooperators agreed to provide substantial assistance in exchange for the opportunity to earn a section 5K1.1 letter. (D. Ex. C, D, E, F.) The defense questioned each cooperator on their motivations in testifying and argued in summation that these witnesses were lying to "get back out on the street. . . ." (Trial Tr. at 725, 757.)

Contrary to the defendants' assertions, the testimony of Mowatt was largely consistent with other evidence introduced at trial. He testified that at first, the plan was to merely "beat up the victim." (Trial Tr. at 131.) However, about "a month or two" into the plan, Collins called Mowatt to let him know that the plan now called for murder. (Id.) When it was done, Mowatt would be paid $25,000, have a $3,000 debt relieved, get a job with Ramirez's company, and receive a Taurus Judge handgun. (Id. at 132.) Collins gave Mowatt $300 to buy the handgun, but after the purchase, Collins maintained possession of it until Mowatt was "ready

5

to go and look for the victim to commit the murder. . . ." (Id. at 133.)  No other trial evidence conflicted with the material portions of any of his testimony.

Phone records revealed frequent contacts between Collins and Mowatt. (G. Ex. 414.)  Mowatt had photographs of the would-be murder victim on his cell phone. (G. Ex. 703-D, 204–07.)  Videos found on Mowatt's phone corroborated the surveillance that Mowatt and Johnson testified they had conducted. (G. Ex. 703-A, B, and C.)  Johnson also testified, corroborating Mowatt's descriptions of the surveillance, the abandoned murder attempt, and Mowatt's interactions with Collins, his gang superior. (Trial Tr. at 459, 468–74.)

The Court carefully instructed the jury on weighing the testimony of cooperating witnesses, noting that the testimony "should be given the weight that it deserves in light of the facts and circumstances before you, taking into account the witness' demeanor, candor, the strength and accuracy of a witness' recollection, his background, and the extent to which his testimony is or is not corroborated by other evidence in the case." (Trial Tr. (Jury Charge) at 737–38.)  The jury implicitly found the testimony of Mowatt and Johnson to be credible.

In arguing that the testimony of the cooperating witnesses was incredible as a matter of law and thus the verdict rested on insufficient evidence, Collins relies on United States v. D'Angelo, No. 02-cr-299 (JG), 2004 WL 315237 (E.D.N.Y. Feb. 18, 2004).  But in that case, Judge Gleeson did not rest his Rule 29 conclusion on disbelief of any witness, but accepted the testimony as true and found that in totality it did not establish a required element, i.e. that the murder was for the purpose of gaining entrance into a gang.[1]  Id. at *12–14.  Similarly, United

---

[1] At one point in its Rule 29 discussion, the court referred to "no credible evidence," D'Angelo, 2004 WL 315237, at *14, but the court's ruling was based on a close reading of the evidence with emphasis on what the witnesses did not say rather than a disbelief of what they did say.  True, on granting the alternative relief of a new trial under Rule 33, the court relied on "overwhelming new evidence of perjury. . . ."  Id. at *31.

6

States v. Bellomo, 176 F.3d 580 (2d Cir. 1999) does not support the position of Collins.[2]  The conviction for conspiracy to commit the murder of one victim was vacated in Bellomo because a reasonable jury could not draw an inference sufficient to support a conviction as to a required element of the crime.  Bellomo, 176 F.3d at 595.  Neither case granted a judgment of acquittal based upon the court's conclusion that the testimony of any witness was incredible.

A court should not "second-guess a jury's apparent decision to credit a witness's testimony except in extreme cases where the testimony was . . . 'incredible on its face' or it 'def[ied] physical realities.' "  United States v. Robinson, 749 F. App'x 35, 37 (2d Cir. 2018) (summary order) (quoting United States v. Truman, 688 F.3d 129, 139 (2d Cir. 2012).  The Court acknowledges that there can be an extreme case where testimony is incredible as a matter of law, but this is not such a case.  Rather, this case falls squarely under the general principal that "[i]t is not for the court on a Rule 29 motion to make credibility determinations. . . ."  United States v. Autuori, 212 F.3d 105, 118 (2d Cir.2000).

      B.   There was Sufficient Probative Evidence From Which a Reasonable Jury Could Conclude that Mowatt was to Receive Something of Pecuniary Value.

Because the Court concludes that Mowatt's testimony was not incredible as a matter of law, Collins's argument that the government did not establish the requisite payment (or any other element) fails as well.  Receiving something of "pecuniary value" is a distinct element of the murder-for-hire statute.  18 U.S.C. § 1958.  To satisfy this element, "there must be some evidence to establish that at the time the agreement was formed, the consideration was something the 'primary significance' of which lay in its 'economic advantage.' "  United States v.

---

[2] Collins also refers to witness testimony contemplated in United States v. Martinez, 844 F. Supp. 975, 980 (S.D.N.Y. 1994).  However, in that case the court found "that there are no exceptional circumstances here to warrant intrusion upon the jury's assessment of the witnesses' credibility" and so the conviction was affirmed. Martinez, 844 F. Supp. at 981.

Frampton, 382 F.3d 213, 219 (2d Cir. 2004) (citing the statute).  Promises of "sale-level quantities of drugs, insurance proceeds, or a promise to reimburse a hit man for a firearm purchase in addition to letting him keep the firearm" satisfy the element, but "future, unspecified favor[s]" do not.  United States v. Hardwick, 523 F.3d 94, 100 (2d Cir. 2008) (citations omitted).

Mowatt initially testified that Collins told him that if he committed the murder, he would receive "some money, as well as a position with [Ramirez's] company."  (Trial Tr. at 125.)  Later in his testimony, he said the price was made "definite" and was to be $25,000, a job at Ramirez's company, the nullification of a debt, and a handgun:

> Q. Now that the job had gone from assault to murder, did the price change?
> A. Yes, the price was definite now.
> Q. What was the price, as you understood it?
> A. I understood that I was to get $25,000 on completion of the murder, and I was also supposed to get a job with Obendy's company, and my debt with Big AK was supposed to be nullified, and I was supposed to receive a Taurus Judge handgun.
> Q. I'm sorry, what kind of handgun? .
> A. Taurus Judge.
> Q. The drug debt that you said that you owed Big AK, what was the approximate amount at that time?
> A. Close to $3,000.

(Trial Tr. at 132.)

Mowatt never testified to the circumstance that gave rise to the pre-existing debt.  But the nullification of a financial debt regardless of its origins is something of pecuniary value.  The government was not required to prove the originating circumstances of the debt and the defendants were free to explore the circumstances on cross-examination.

While cross-examination did reveal that Mowatt also owed money to an associate of Collins's for a religious ceremony, Mowatt never implied that this was related to his compensation for facilitating this murder.  (Id. at 283.)  The money Mowatt was to receive, along with the nullification of a debt, a handgun, and a job, all would provide economic advantage to

8

Mowatt and are of pecuniary value.  The jury was explicitly charged that they had to find that "there was a mutual agreement, understanding or promise that something of value would be exchanged for committing the murder."  (Trial Tr. (Jury Charge) at 789.)  Implicitly, the jury unanimously found that this element was met.

The jury had sufficient evidence before it to find that the agreement to commit a murder-for-hire was primarily in exchange for the payment of consideration of economic value.  There is no basis to grant a judgment of acquittal on this asserted ground.

### C. There was Sufficient Probative Evidence From Which a Reasonable Jury Could Conclude That a Facility of Interstate Commerce was Used.

Ramirez and Collins next argue that the Court should enter a judgment of acquittal on the murder-for-hire and murder-for-hire conspiracy counts because the government failed to prove that any member of the conspiracy used or caused another to use any facility of interstate commerce, a required element of the crime.  The argument was rejected at the pre-trial stage.  (Doc 32.)

At trial, the parties stipulated that Sprint and T-Mobile (the service providers used by Collins and Ramirez, and Mowatt and Johnson respectively), "operate[] a nationwide wireless network."  (G. Ex. 510.)  Records from Mowatt's phone show calls to Collins that were routed through Philadelphia.  (G. Ex. 402.)  As the Second Circuit has held, "the national telephone network is a 'facility of interstate . . . commerce' for purposes of the federal murder-for-hire statute. . . ."  United States v. Giordano, 442 F.3d 30, 39 (2d Cir, 2006) (citing United States v. Perez, 414 F.3d 302, 304 (2d Cir. 2005) (per curiam)).

There was sufficient evidence from which a reasonable jury could conclude that a facility of interstate commerce had been used by a member of the conspiracy during and in furtherance of the conspiracy.

9

THE MOTION FOR A NEW TRIAL COURT WILL BE DENIED.

Collins and Ramirez also ask the Court to grant them a new trial under Rule 33. In large measure, they repeat and reassert their positions on the credibility of the witnesses, implicitly arguing that the verdict was against the greater weight of the credible evidence.

Generally, a court "has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001). For instance, "[i]n deciding whether to grant a motion for a new trial, the judge is not required to view the evidence in the light most favorable to the prosecution." United States v. Levy, 594 F. Supp. 2d 427, 435 (S.D.N.Y. 2009) (internal quotation marks omitted). Instead, "the court is entitled to weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." United States v. Robinson, 430 F.3d 537, 543 (2d Cir. 2005) (internal quotation marks omitted). At the same time, however, "the court may not wholly usurp the jury's role. It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." Id. (internal quotation marks omitted). "The ultimate test is whether letting a guilty verdict stand would be a manifest injustice. . . ." Canova, 412 F.3d at 349.

The Court found the evidence of Mowatt and Johnson in most material respects to be credible and consistent with the other evidence in the case. The Rule 33 motions for a new trial will be denied. The jury's credibility assessment was rational and consistent with the evidence. The jury observed Mowatt's demeanor under lengthy cross-examination regarding his motives to lie. As discussed above, the jury was appropriately charged on their role of weighing the testimony of cooperating witnesses.

Mowatt credibly testified that he accepted Collins's proposal to murder Santiago on the promise that he would receive $25,000 as well as a job, annulment of debt, and a handgun. He and Johnson travelled to Santiago's house and place of work to engage in reconnaissance, and eventually to perform the murder, before abandoning the plan at the last minute. The evidence was both credible and sufficient to sustain the jury's verdict, and nothing indicates that such a verdict is a "manifest injustice."

CONCLUSION

The Court has considered all of the arguments raised by both defendants, including those not expressly addressed herein. Collins's and Ramirez's motions for a judgment of acquittal under Rule 29 and for a new trial under Rule 33 are DENIED. The Clerk is directed to terminate the motions (Docs 129, 131).

SO ORDERED.

Dated: New York, New York
January 27, 2021

P. Kevin Castel
United States District Judge